UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In re PARMALAT SECURITIES LITIGATION,   :        MASTER DOCKET
                                        :        04 MD 1653 (LAK)
This document relates to:               :          ECF Case
                                        :
----------------------------------------X
                                        :
ENRICO BONDI,                           :
                         Plaintiff,     :        04 Civ. 9771
                                        :          (LAK)(DLC)
            -v-                         :
                                        :          OPINION
GRANT THORNTON INTERNATIONAL et al.,    :
                         Defendants.    :
                                        :
----------------------------------------X

Appearances:

For Plaintiff Enrico Bondi:
John B. Quinn
Peter E. Calamari
Loren Kieve
R. Brian Timmons
Terry L. Wit
Quinn Emanuel Urquhart Oliver & Hedges LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

For Defendant Deloitte Touche Tohmatsu:
Michael J. Dell
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

For Defendants Deloitte & Touche S.p.A. and Dianthus S.p.A.:
Richard A. Martin
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036

For Defendants Deloitte & Touche LLP and Deloitte & Touche USA
LLP:

Daniel F. Kolb
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

For Defendant Deloitte Touche Tohmatsu Auditores Independentes:
William R. Maguire
Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, NY 10004

For Defendant Grant Thornton International:
James L. Bernard
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

For Defendant Grant Thornton LLP:
Linda T. Coberly
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601

For Bank of America Corp., Bank of America NT&SA, Banc of
America Securities LLC, Bank of America International Limited,
and Bank of America, N.A.:
Peter J. Covington
John H. Cobb
Helms Mulliss & Wicker, PLLC
201 North Tryon Street
Charlotte, NC 28202

Of Counsel
Joseph B. Tompkins, Jr.
Alan C. Geolot
Mark P. Guerrera
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, DC 20005

For Citigroup Inc., Citibank N.A., Vialattea LLC, Buconero LLC,
and Eureka Securitisation plc:
George A. Schieren
Mark A. Kirsch
Joel M. Cohen
Jason A. D'Angelo
Clifford Chance US LLP

31 West 52nd Street
New York, NY 10019

For The McGraw-Hill Companies, SRL and The McGraw-Hill
Companies, SA:
Kenneth E. Warner
Lewis S. Fischbein
Warner Partners, P.C.
950 3rd Avenue, 32nd Floor
New York, NY 10022-2705

Of Counsel
Philip T. Bruns
Jeffry J. Cotner
Gibbs & Bruns L.L.P.
1100 Louisiana, Suite 5300
Houston, TX 77002

For Banca Intesa S.p.A. (now known as Intesa Sanpaolo S.p.A.):
Michael C. Lambert
Gilmartin, Poster & Shafto LLP
845 Third Avenue
New York, NY 1002

For Gerald K. Smith and G. Peter Pappas:
Leo R. Beus
Stephen M. Craig
Adam C. Anderson
Beus Gilbert PLLC
4800 N. Scottsdale Road #6000
Scottsdale, AZ 85251

Herbert P. Minkel, Jr.
131 East 62nd Street
New York, NY 10021

For Food Holdings Limited, Dairy Holdings Limited, and Parmalat
Capital Finance Limited:
Richard I. Janvey
Janvey, Gordon, Herlands, Randolph & Cox, LLP
355 Lexington Avenue
New York, NY 10017

Allan B. Diamond
J. Gregory Taylor
J. Benjamin King
Diamond, McCarthy, Taylor, Finley & Lee, LLP

3

1201 Elm Street, Suite 3400
Dallas, TX 75270

For Lead Plaintiff in Proposed Class Action:
James J. Sabella
Grant & Eisenhofer P.A.
1201 North Market Street
Wilmington, DE 19801

For Parmalat Brazil S/A - Industria de Alimentos:
Stephen L. Ascher
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022

Of Counsel
Chester T. Kamin
John R. Harrington
Matt D. Basil
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611


DENISE COTE, District Judge:

This Opinion addresses a request for a bar order and pro
tanto judgment credit following a settlement between the
plaintiff and auditor defendants in this complex litigation
involving actions in multiple fora both in the United States and
abroad.  Non-settling defendants, principally deep-pocket banks
and corporations, vigorously protest that the proposed judgment
credit formula is unfair to them.  For the following reasons, a
revised bar order has been issued with a proportionate share
judgment credit.

This multidistrict litigation arising from the 2003
collapse of the Parmalat dairy conglomerate is before the

4

Honorable Lewis A. Kaplan, in the Southern District of New York. The plaintiff, Dr. Enrico Bondi ("Dr. Bondi"), and several of the accounting firm defendants in an action originally filed in Illinois (the "Auditor Action") have reached a settlement, and have moved for a good faith determination and entry of a bar order and partial final judgment.  Judge Kaplan having recused himself from determining this motion, it has been assigned to this Court.  Familiarity with prior Opinions by Judge Kaplan in In re Parmalat Securities Litigation, and particularly the Opinions in the Auditor Action, is assumed.

<u>Background</u>

A. The Parmalat Litigation

In December 2003, Parmalat, the global food and dairy products conglomerate with headquarters in Italy and subsidiaries around the world, collapsed in scandal.  It announced that a certain deposit account supposedly maintained with Bank of America, which purportedly contained $4.9 billion, did not exist.  Within days of that announcement, the company instituted bankruptcy proceedings in Italy.  It was later revealed that officials at the company had perpetrated a variety of frauds to mask its true financial condition.  The fraud and the company's collapse have led to substantial litigation both in the United States and Italy.

Plaintiff Dr. Bondi has been appointed by the Italian government as the Extraordinary Commissioner of Parmalat Finanziaria, S.p.A., Parmalat S.p.A., and certain affiliates (collectively, "Parmalat"), a position described as being similar to that of a bankruptcy trustee in the United States. Any Parmalat-related entity declared insolvent by the Court of Parma in Italy can be admitted into Extraordinary Administration. Dr. Bondi created an Assuntore, which is a new, separate corporation, named Parmalat S.p.A., into which all assets and liabilities of the Parmalat-related entities in Extraordinary Administration were transferred. As Extraordinary Commissioner, Dr. Bondi has filed many actions in Italy and three separate lawsuits in the United States against three different groups of defendants.

Dr. Bondi commenced the Auditor Action in Illinois state court against former Parmalat auditors and their affiliates on a variety of state law grounds. The Auditor Action was removed to federal court as being related to a foreign bankruptcy proceeding, Bondi v. Grant Thornton Int'l, 322 B.R. 44 (S.D.N.Y. 2005), and transferred by the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), In re Parmalat Sec. Litig., 350 F. Supp. 2d 1356 (J.P.M.L. 2004), to Judge Kaplan. The claims include professional malpractice, fraud, aiding and abetting fraud and constructive fraud, negligent misrepresentation,

aiding and abetting breach of fiduciary duty, theft and
diversion of corporate assets, conversion, unjust enrichment,
aiding and abetting fraudulent transfer, deepening insolvency,
and unlawful civil conspiracy.  Dr. Bondi seeks damages in the
amount of $10 billion.

In the Auditor Action Dr. Bondi sued Grant Thornton
International, which is an Illinois corporation headquartered in
London, and its member firms Grant Thornton LLP and Grant
Thornton S.p.A. (collectively, "Grant Thornton"), and Deloitte
Touche Tohmatsu, a Swiss association with headquarters in New
York, and its member firms Deloitte & Touche USA LLP, Deloitte &
Touche LLP, and Deloitte & Touche S.p.A. (collectively, the
"Deloitte Defendants").

In addition to the Auditor Action, Dr. Bondi filed suit
against Bank of America Corporation and certain of its
affiliates (collectively, "Bank of America") in the Western
District of North Carolina (the "Bank of America Action"), an
action which has also been transferred by the MDL Panel to Judge
Kaplan; and against Citigroup and others (collectively,
"Citigroup") in New Jersey state court (the "Citigroup Action").
Dr. Bondi has successfully resisted the defendants' efforts to
remove the Citigroup Action to federal court for transfer to
Judge Kaplan's docket.  Dr. Bondi has also claimed damages of

$10 billion in both the Bank of America Action and the Citigroup Action.

Dr. Bondi has not been the only plaintiff suing defendants in the United States for their Parmalat-related activities. Also pending before Judge Kaplan are a putative securities class action; actions brought by bankruptcy trustees of two U.S. Parmalat entities, Gerald K. Smith ("Smith") for the Farmland Dairies LLC Litigation Trust ("Farmland Trust"), and G. Peter Pappas ("Pappas") for Parmalat USA; and actions by liquidators of three Parmalat financing companies in the Cayman Islands -- Food Holdings Limited, Dairy Holdings Limited, and Parmalat Capital Finance Limited (collectively, the "Cayman Companies") -- all of which are brought against multiple defendants including Grant Thornton and the Deloitte Defendants.  One of the defendants in the Farmland Trust action is Banca Intesa S.p.A. ("Banca Intesa"), which is also a defendant in a Parmalat-related New York state court action brought by Bank Hapoalim (Switzerland) Ltd. ("Hapoalim") and in an Italian proceeding brought by Dr. Bondi.  In sum, all of the Parmalat-related litigation in the United States has been consolidated for pretrial purposes before Judge Kaplan with the exception of the Citigroup action in New Jersey state court and the Hapoalim action in New York state court.

8

As noted, Dr. Bondi has also brought multiple actions in Italy, including actions as an intervening civil party in criminal proceedings pending in Italian courts against, among others, employees of Deloitte & Touche S.p.A.  Under Italian law, "persons claiming to be victims of charged offenses can apply to the court to intervene as parte civile or 'civil parties' in pending criminal proceedings to seek a civil judgment for damages."  Many other parties have also filed actions as such civil parties in criminal proceedings in Italy. Dr. Bondi has also brought an action in Italy against the McGraw-Hill Companies, SRL and The McGraw-Hill Companies, SA (collectively, "McGraw-Hill"), and McGraw-Hill has added Deloitte & Touche S.p.A. as a party to that action.  Overall, there is extensive litigation ongoing in both the United States and Italy relating to the Parmalat collapse.

B. The Settlement Agreement

Fact discovery in the Auditor Action had continued from at least early 2005 and was due to conclude on January 22, 2007. Judge Kaplan stayed discovery in the Auditor Action in November 2006, however, in light of settlement negotiations.  Settlement negotiations in the Auditor Action included a mediation in early August 2006 before former California Superior Court Judge Daniel

Weinstein and a subsequent session with Magistrate Judge Henry Pitman of this district.

Parmalat, as represented by Dr. Bondi, and Deloitte & Touche S.p.A. and Dianthus S.p.A. (which until 2003 operated in Italy under the Deloitte & Touche name) entered into a settlement agreement effective January 12, 2007 (the "Agreement"), and in connection with the Agreement, a side letter (the "Side Letter") was executed by the remaining Deloitte Defendants and additionally Deloitte Touche Tohmatsu Auditores Independentes ("Deloitte Brazil") (collectively, "Deloitte").  Under the Agreement and the Side Letter, redacted versions of which have been filed publicly, for a total consideration to Parmalat valued at $150 million, all claims by "Parmalat Releasors" are released against the "Deloitte & Touche Releasees."  The Agreement purports to comply with the Illinois Joint Tortfeasor Contribution Act ("Illinois Act"), 740 Ill. Comp. Stat. 100 et seq.:

> The parties agree that this Agreement was made in good
> faith pursuant to the provisions of the Illinois Joint
> Tortfeasor Contribution Act . . . . Promptly following
> the Effective Date [January 12, 2007] [Deloitte &
> Touche] S.p.A. and Dianthus [S.p.A.] shall file a
> motion in the MDL Proceedings to obtain a
> determination that this is a good faith settlement,
> and a contribution bar, pursuant to the Illinois Act.

If a contribution bar order is not entered by March 13, however, Deloitte & Touche S.p.A. and Dianthus S.p.A. have the option to

terminate the settlement agreement with a payment of $15 million:

> [Deloitte & Touche] S.p.A. and Dianthus [S.p.A.] have the option, to be exercised in their sole discretion by sending Parmalat a notice of termination on or before the expiration of 60 days from the Effective Date and then paying Parmalat 15 million dollars ($15 million) within three days thereafter, to terminate this settlement agreement if an order granting a contribution bar as set forth above is not entered by such date. If [Deloitte & Touche] S.p.A. and Dianthus [S.p.A.] exercise this option as aforesaid, the Agreement shall be terminated when that payment is made, and thereafter shall be null, void and of no effect and shall not be used for any purpose, including in the Lawsuit or MDL Proceedings.

(Emphasis added.) The Agreement states that Illinois law shall apply to its terms:

> Choice of Law: This Agreement shall be governed by and interpreted in accordance with the laws of the State of Illinois that are applicable to agreements made and wholly performed by Illinois residents wholly within Illinois and without regard to Illinois or any other choice of law principles.

In connection with the settlement, Deloitte, joined by Dr. Bondi, moved on January 18, 2007 for entry of a good faith determination pursuant to the Illinois Act and final judgment as to the Deloitte Defendants, and entry of a contribution bar order. The January 18 proposed order submitted by the Deloitte Defendants (the "January 18 Proposed Order"), which incorporates language from the Agreement, seeks to have the Illinois Act govern the settlement agreement:

> Under Illinois law, non-settling parties can seek a
> credit at judgment if the injuries they caused were
> contributed to by the previously settling defendant.
> Consistent with Illinois law, the Court now determines
> only that, <u>to the extent that any person</u>, including
> without limitation the Non-Settling Parties, <u>is</u>
> <u>entitled to a settlement credit, it shall be in</u>
> <u>accordance with the Illinois Act</u>.

(Emphasis added.)

The definitions for the terms in the Agreement are also in the January 18 Proposed Order.  Parmalat Releasors are defined as "Parmalat, its predecessors, successors, . . . and any person, firm, trust, corporation, or entity in which Parmalat has a controlling interest," with Parmalat meaning Dr. Bondi and Parmalat S.p.A.  The Deloitte & Touche Releasees include all of the Deloitte Defendants plus Dianthus S.p.A. and Deloitte Brazil, and "any and all present and former [Deloitte Touche Tohmatsu] member and correspondent firms."  "Non-Settling Parties" against whom the bar order will apply include not only Grant Thornton but also

> <u>all persons</u> (other than the Parmalat Releasors and the
> Deloitte & Touche Releasees) <u>who are parties to the</u>
> <u>Auditor Action, any other action in the MDL</u>
> <u>Proceedings, or the Citigroup Action, and all other</u>
> <u>persons and entities that directly or through their</u>
> <u>counsel have been served with or have otherwise</u>
> <u>received notice of the Order to Show Cause</u>.

(Emphasis added.)

C. Entry of a Bar Order

Deloitte brought its motion on January 18.  An Order dated the same day provided that opposition was to be served by January 22, with Deloitte's reply due at the hearing which was scheduled for January 23.  Service of the January 18 Order was made by e-mail to counsel for all the parties in the MDL proceeding and the Citigroup Action and to McGraw-Hill; notice was also published in the national editions of The New York Times, The Wall Street Journal, and various Italian publications.  The January 23 hearing was subsequently adjourned to January 30, and after the motion was assigned to this Court on January 30, was rescheduled for February 15.  In the meantime, the parties and those opposing entry of the Order were given limited additional opportunities to respond to the motion.[1]  Objections to the proposed bar order have been received from Bank of America, Citigroup, McGraw-Hill, Banca Intesa, Smith and Pappas for the Farmland Trust and Parmalat USA, the Cayman

---

[1] A January 31 Order allowed the parties in the Auditor Action and those who submitted objections on or before January 30 to Deloitte's motion to submit a letter-brief by February 8.  In addition, in response to a Notice of Interest filed January 30, Parmalat Brazil was granted permission to file a response by February 8.  Finally, on February 9, Dr. Bondi and Deloitte were granted an opportunity to respond to the final submissions by February 13.  Because of the additional time provided to all the parties to submit responses, the objections raised by some parties based on insufficient time to oppose the motion are moot.

Companies, Parmalat Brazil, and many individual Italian security-holders of Parmalat Finanziaria, S.p.A.

By February 13, Deloitte, Parmalat, and the objectors were able to work out some of their differences, and Deloitte submitted a new draft of the proposed order. Objections remained, however, with regard to the judgment credit to be provided under the bar order, the precise scope of the releases, and the identity of the Parmalat entities covered under the Agreement. At the hearing on February 15, this Court ruled from the bench on all three issues, and stated that an Opinion would follow providing the reasoning behind rejection of the Illinois Act for purposes of calculating the judgment credit. A bar order was signed on February 20. The judgment credit under the bar order reads:

> To the extent any person, including without limitation any of the Non-Settling Parties, is entitled to a settlement credit, it shall be calculated using a "capped proportionate share" formula, pursuant to which, for common damages, the credit given for the settlement will be the greater of the settlement amount or the proportionate share of the Deloitte & Touche Releasees' fault as proven at trial.

This Opinion explains why the bar order replaces the <u>pro tanto</u> judgment credit from the Illinois Act with the proportionate share credit found in Italian law.

<u>Discussion</u>

Deloitte and Parmalat seek to have Illinois law -- and particularly its <u>pro tanto</u> method -- apply to the calculation of the judgment credit.  Bank of America, Citigroup, McGraw-Hill, and Banca Intesa object to the application of Illinois law, and request application of the proportionate share method or at the very least that the issue be left open for later determination by the courts presiding over the actions in which judgments are entered against non-settling defendants.

I. The Illinois Act

Deloitte and Parmalat argue that because they have designated Illinois law as the governing law of the Agreement, Illinois law on contribution bar orders and judgment credits should apply.  Illinois recognizes the right of contribution among joint tortfeasors:

> <u>The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share</u> of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share.  No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

Illinois Act, 740 Ill. Comp. Stat. 100/2(b) (emphasis added).  "The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability."  <u>Id.</u> 100/3.

If a court makes a finding that the settlement has been entered "in good faith," then non-settling defendants receive a judgment credit "to the extent" of any amount paid in settlement or stated in the settlement agreement.  Under the Illinois Act,

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

Id. 100/2(c).  With that good faith determination, the settling defendant is protected against contribution claims:  "The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor."  Id. 100/2(d).

The good faith determination is necessary in light of Illinois's pro tanto rule.  Because the pro tanto method calculates the judgment credit "by subtracting the amount of the settlement from the plaintiff's damages," McDermott, Inc. v. AmClyde, 511 U.S. 202, 209 (1994) (citation omitted), it "can result in judgment reduction that is inconsistent with proportionate fault," In re Masters Mates & Pilots Pension Plan & IRAP Litig., 957 F.2d 1020, 1029 (2d Cir. 1992), and impose a burden on a non-settling defendant to pay more than its

16

equitable share.  Good faith hearings are required to protect against the "potential for unfairness" inherent in the pro tanto method.  McDermott, 511 U.S. at 213.  To provide adequate protection, however, the hearing must arrive at "a fair forecast" of the settling defendant's equitable share of the judgment.  Id.  In order to serve their "protective function effectively," good faith hearings "have to be minitrials on the merits."  Id.  In practice, "they are often quite cursory."  Id.

Illinois emphasizes the incentive for settlement which the pro tanto judgment credit formula provides, see id. at 214-15, but does require its courts to consider among other factors "whether the settlement amounts were within a reasonable range of the settling parties' fair shares of liability."  Cianci v. Safeco Ins. Co. of Ill., 826 N.E.2d 548, 562 (Ill. App. Ct. 2005).  There is, however, no requirement for a "separate evidentiary hearing."  Johnson v. United Airlines, 784 N.E.2d 812, 824 (Ill. 2003).  A trial court in Illinois "need not decide the merits of the tort case or rule on the relative liabilities of the parties before making a good-faith determination," id., although some "justification for the settlement amounts and the settling defendants' respective liability" should appear in the record.  Cianci, 826 N.E.2d at 563.  In arriving at a good faith determination, Illinois courts principally look for evidence of collusion and manipulation of

the settlement process.  See, e.g., Associated Aviation Underwriters, Inc. v. Aon Corp., 800 N.E.2d 424, 435 (Ill. App. Ct. 2003).

The Illinois Act does not apply extraterritorially.  Summar v. Ind. Harbor Belt R.R. Co., 515 N.E.2d 130, 856-57 (Ill. App. Ct. 1986).  In cases where the underlying events and injury occurr in another jurisdiction, Illinois courts apply the judgment credit rules of those jurisdictions and refuse to apply the Illinois Act's pro tanto formula.  See, e.g., Chesler v. Trinity Indus., Inc., 99 C 3234, 2002 WL 1553474, at *2-3 (N.D. Ill. July 11, 2002) (M.J.) (applying Nebraska's proportionate share credit); Truck Components Inc. v. Beatrice Co., 94 C 3228, 1994 WL 520939, at *12 (N.D. Ill. Sept. 21, 1994) (refusing to apply Illinois Act where tort occurred in Wisconsin); Ralston v. Gallo Equip. Co., 749 F. Supp. 179, 181 (N.D. Ill. 1990) (applying Indiana's no-contribution rule); Summar, 515 N.E.2d at 133 (refusing to apply Illinois Act where tort occurred in Indiana).

II. Objections to Application of the Illinois Act

Several parties have filed objections to entry of an order barring their claims for contribution against Deloitte insofar as that order would adopt the Illinois Act and its pro tanto judgment credit.  All of the objectors are defendants in actions

18

filed by Dr. Bondi in jurisdictions other than Illinois.  Dr. Bondi sued Bank of America in North Carolina; Citigroup in New Jersey; and McGraw-Hill and Banca Intesa in Italy.  Each of these defendants seeks a judgment credit under the proportionate share method.  In contrast to the pro tanto method, the proportionate share method "diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor."  McDermott, 511 U.S. at 209 (citation omitted).  The objectors argue that the proportionate share method is consistent with the Italian law on judgment credits, and have provided declarations of Italian law experts on the issue.

On the eve of the February 15 hearing, the objecting and settling parties also suggested a compromise.  They proposed leaving the issue open for a later determination provided there is explicit language reflecting that the formula for a judgment credit remains undetermined.[2]  From the standpoint of the non-

---

[2] The parties proposed the following language (or similar variations thereof):

The Non-settling parties shall be entitled to settlement credit in other actions in the event that such Non-Settling Parties are found liable for injuries contributed to by the Deloitte & Touche Releasees.  Notwithstanding any other provision in this Order, the Court makes no determination concerning the applicable law or proper method for calculating that settlement credit.  Such matters are expressly reserved for determination by the courts

settling parties, no determination of the matter is far preferable to the imposition of Illinois's pro tanto rule.

It is appropriate to resolve the issue of the judgment credit formula now. Where the method by which a judgment credit is to be calculated is left open, non-settling defendants are "unfairly prejudiced." Denney v. Deutsche Bank AG, 443 F.3d 253, 272, 274 (2d Cir. 2006). The choice of a setoff formula drives to a great extent the manner of defense that will be presented at trial. Id. at 275 (citing In re Jiffy Lube, 927 F.2d 155, 161-62 (4th Cir. 1991)). Because of these strategic considerations, a non-settling defendant is "entitled to know what the law of the case is in advance of trial." Id. (citation omitted). Moreover, the "failure to designate a setoff method exposes a non-settling defendant to the risk of receiving inadequate credit for the contribution bar imposed on it." Id. (citation omitted).

Here, the objectors have stated a clear preference and legal support for the adoption of the proportionate share formula instead of Illinois's pro tanto rule. In such

---

having jurisdiction over any such other actions, and nothing in this Order shall preclude those courts or the Non-Settling Parties from taking all necessary action to determine and obtain the settlement credits available under applicable law.

(Emphasis added.)

circumstances, the methodology for computing a judgment credit will not be left uncertain.

III. Choice-of-Law Analysis

To locate the appropriate judgment credit formula for a settlement within the Auditor Action, the inquiry should begin with the Illinois choice-of-law rules.  "[U]nder the rule of Van Dusen v. Barrack [376 U.S. 612 (1964)], a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).  In this case, that jurisdiction is Illinois.[3]

---

[3] Dr. Bondi and Deloitte contend that Judge Kaplan has already held that Illinois law supplies the substantive law for all issues in the Auditor Action.  They are wrong.  In previous Opinions in this action, Judge Kaplan has applied Illinois law where "[a]ll parties agree, or at least assume, that the applicable substantive law is that of Illinois."  In re Parmalat Sec. Litig., 377 F. Supp. 2d 390, 402 n.78 (S.D.N.Y. 2005); see also In re Parmalat Sec. Litig., 421 F. Supp. 2d 703, 712 (S.D.N.Y. 2006) ("All parties agree that the applicable substantive law is that of Illinois.").  Judge Kaplan has also applied federal law to an issue, where the parties relied on federal authorities "although it is far from clear that federal law would govern if any party contended otherwise."  In re Parmalat Sec. Litig., 377 F. Supp. 2d at 420.  This adoption of the parties' choice is unsurprising.  Where the parties have consented to the application of forum law, that consent is sufficient to end the choice of law inquiry.  3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999).  Here, where there is strenuous objection to the application of the substantive law of the transferor forum, a choice-of-law analysis must be undertaken.

In the absence of a "significant federal interest," a
federal court should look to the forum state's choice-of-law
rule even when a federal statute, such as the bankruptcy
statute,[4] provides a "federal forum for claims that hinge upon
state law."  In re Gaston & Snow, 243 F.3d 599, 605, 607 (2d
Cir. 2001).  In general, "[t]he ability of the federal courts to
create federal common law and displace state created rules is
severely limited."  Id. at 606.  In order to justify the
decision to fashion rules of federal common law, the "guiding
principle is that a significant conflict between some federal
policy or interest and use of state law must first be
specifically shown."  Atherton v. FDIC, 519 U.S. 213, 218 (1997)
(citation omitted).  There is no need for such an inquiry in
this case because both the federal common law and the Illinois
choice-of-law rule is the same:  the Restatement (Second) of
Conflict of Laws' rule of the most-significant-relationship.
See In re Gaston & Snow, 243 F.3d at 605; Esser v. McIntyre, 661
N.E.2d 1138, 1141 (Ill. 1996).  Since there is no conflict,
Illinois's choice-of-law rule will be applied.[5]

---

[4] Dr. Bondi refers to this case as a diversity action, but as
already noted, the action was removed to federal court under the
bankruptcy statute.  Bondi, 322 B.R. 44.

[5] Where a choice-of-law analysis is required, it must be
conducted separately for each issue.  Ruiz v. Blentech Corp., 89
F.3d 320, 323-24 (7th Cir. 1996).  This Opinion analyzes the
choice-of-law issue for the selection of a judgment credit

Under Illinois's most-significant-relationship rule,

> the law of the place of injury controls unless
> Illinois has a more significant relationship with the
> occurrence and with the parties.  When applying the
> most significant relationship test, a court should
> consider (1) where the injury occurred; (2) where the
> injury-causing conduct occurred; (3) the domicile of
> the parties; and (4) where the relationship of the
> parties is centered.

Esser, 661 N.E.2d at 1141 (emphasis added).  Where standards of

conduct are at issue, "the place of conduct and the place of

injury are the most important factors."  Stavriotis v. Litwin,

710 F. Supp. 216, 218 (N.D. Ill. 1988).  When the injury is

pecuniary, the place where the conduct occurred takes

precedence.  Id. at 219.  The presumption that the law of the

place of injury controls is "most difficult to overcome where

the conduct causing the injury occurred in the same state where

the injury occurred."  Miller v. Long-Airdox Co., 914 F.2d 976,

978 (7th Cir. 1990); see also Carris v. Marriott Int'l, Inc.,

466 F.3d 558, 560-62 (7th Cir. 2006).

This lawsuit seeks redress for injuries suffered outside

Illinois by an Italian company.  Dr. Bondi is the Extraordinary

Commissioner of a bankrupt Italian company, appointed to his

position by the Italian government.  He asserts injuries

sustained in Italy by Parmalat S.p.A. to its equity and good

will.  Where the plaintiff is located in Italy and the economic

formula alone and does not decide which law should be applied
for any other issue that may arise in the Auditor Action.

impact of the alleged tortious acts is felt in Italy, the place of injury is clearly Italy.  See Medline Indus. Inc. v. Maersk Medical Ltd., 230 F. Supp. 2d 857, 864 (N.D. Ill. 2002).

The presumption that Italian law applies is not overcome by an examination of Illinois's relationship with either the parties or the occurrences which gave rise to the plaintiff's injuries.  Illinois simply does not have the most significant relationship to this action.  The injury occurred in Italy.  The injury-causing conduct also occurred principally in Italy:  The massive scheme to hide corporate losses and divert funds is alleged to have been devised by Parmalat's officers and its Italian auditor Grant Thornton S.p.A.  The Italian firm Deloitte & Touche S.p.A. participated when it prepared audit reports for Parmalat using an Italian address.  In re Parmalat Sec. Litig., 377 F. Supp. 2d at 397, 399.  While the scheme was global in scope, including activity in the Cayman Islands and Brazil, among other places, there were no misdeeds committed in Illinois.

The domicile of the parties does not point to Illinois as the jurisdiction with the most significant relationship either.  Parmalat is an Italian entity.  The Deloitte Defendants, whose liability is alleged to be derived from their relationship with Deloitte & Touche S.p.A., are not Illinois domiciliaries.  Deloitte Touche Tohmatsu is a Swiss association headquartered in

New York; Deloitte & Touche USA LLP is a Delaware corporation with headquarters in New York; Deloitte & Touche LLP is a Delaware limited liability partnership with headquarters in New York; and Deloitte & Touche S.p.A. is an Italian company.[6]  Only two of the Grant Thornton defendants have a significant connection to Illinois.  Grant Thornton International is an Illinois corporation with its headquarters in London; Grant Thornton LLP is an Illinois limited liability partnership with headquarters in Illinois; and Grant Thornton S.p.A. is an Italian company.

Finally, the relationships among the parties are not centered in Illinois.  The relationships arise from the auditing work performed principally in Italy by Italian auditors of Italian companies.  Parmalat's claims against the U.S. accounting firms principally rest on theories of derivative liability for the work performed by their Italian affiliates. In sum, an examination of Illinois's relationship with the occurrence and with the parties confirms that Italy's interest is substantial and should not be displaced.

Dr. Bondi has not attempted to grapple with the choice-of-law issues, even when confronted with four affidavits of Italian

---

[6] The motions to dismiss brought by the two U.S. Deloitte Defendants in the Auditor Action were granted in March 2006.  In re Parmalat Sec. Litig., 421 F. Supp. 2d at 722.  Parmalat has moved for leave to amend to add allegations against them.

law presented by Deloitte and by those objecting to the judgment credit formula in the proposed bar order.  He has, however, described Illinois's contacts with the Auditor Action in his complaint.  Those allegations do not alter the foregoing analysis.

The complaint in the Auditor Action asserts that money obtained through the Parmalat fraud was channeled through U.S. bank accounts, including accounts at Citibank, which has a major presence in Illinois.  There is no allegation that a Citibank account in Illinois was used to divert or receive diverted funds.

Dr. Bondi claims that Parmalat has substantial U.S. operations.  Those operations were concentrated, however, on the East Coast, not in Illinois.  In any event, it was the U.S. Parmalat entities, who are not in Extraordinary Administration and who are not represented by Dr. Bondi, who ran the U.S. operations.  The U.S. Parmalat entities have brought their own lawsuits against Deloitte and others in another jurisdiction.

The complaint in the Auditor Action also points out that Parmalat marketed and sold notes and bonds to U.S. investors, including investors in Illinois.  The Auditor Action, however, is not a securities action on behalf of injured U.S. investors, and Dr. Bondi cannot assert any claims that belong to Parmalat creditors.  In re Parmalat Sec. Litig., 377 F. Supp. 2d at 420-

21.  The creditors are pursuing their own independent putative class action elsewhere.

As far as the defendants' connection to Illinois is concerned, Dr. Bondi highlights that Deloitte Touche Tohmatsu has two offices in Illinois, and that Deloitte & Touche USA LLP and Deloitte & Touche LLP have audited Illinois companies in the past.  Judge Kaplan has already declared that the latter two entities cannot be held vicariously liable for the actions of Deloitte & Touche S.p.A.  In re Parmalat Sec. Litig., 421 F. Supp. 2d at 717-18.  In any event, Dr. Bondi does not assert that any services on the Parmalat audits were performed at any Deliotte Defendant office in Illinois.

As already observed, two of the Grant Thornton defendants are incorporated in Illinois.[7]  A defendant's citizenship,

---

[7] If Dr. Bondi had sued Grant Thornton in London, where it is headquartered, rather than in Illinois, where it is incorporated, no one would argue that Illinois law should apply to that action, based only on the state of incorporation of two of the defendants.  "The purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum."  Lauritzen v. Larsen, 345 U.S. 571, 591 (1953).  It is likely that Italian law would supply the judgment credit formula in whatever forum Dr. Bondi might have chosen for his suit against the Deloitte Defendants.  For example, New Jersey, which Dr. Bondi selected as the forum to sue Citigroup, applies the "flexible 'governmental-interest' analysis" under the Restatement to determine which state has the greatest interest, Erny v. Estate of Merola, 792 A.2d 1208, 1212, 1214 (N.J. 2002); and North Carolina, in which Dr. Bondi chose to sue the Bank of America, generally applies the rule of

however, is not enough to mandate application of a jurisdiction's law where the events in question occurred elsewhere.  <u>Avery v. State Farm Mut. Auto. Ins. Co.</u>, 835 N.E.2d 801, 855 (Ill. 2005).

Applying Illinois choice-of-law rules, the jurisdiction whose law provides the appropriate judgment credit formula is Italy.  The result of the choice-of-law analysis is entirely consistent with the discussion above showing that courts do not apply the Illinois Act extraterritorially.[8]

IV. Judgment Credit Under Italian Law

Deloitte and several of the objectors have provided declarations of Italian law.[9]  "The court, in determining foreign

---

"<u>lex loci deliciti</u>, the law of the situs of the claim," <u>Gbye v. Gbye</u>, 503 S.E.2d 434, 435 (N.C. Ct. App. 1998).

[8] "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  <u>Allstate Ins. Co. v. Hague</u>, 449 U.S. 302, 313 (1981).

[9] Deloitte submitted a declaration from Pietro Rescigno, Professor Emeritus at the Università degli Studi La Sapienza di Roma.  Bank of America submitted a declaration from Ennio Cicconi, who is an Italian defense counsel for Bank of America in litigation before Italian courts.  Citigroup has provided a declaration from Fabio Guastadisegni, who is a partner at Clifford Chance's Milan office and represents Citigroup in Italian Parmalat proceedings.  Lastly, McGraw-Hill presents a declaration from Luca G. Radicati di Brozolo, who is a professor at the Law School of the Catholic University of Milan, and also

law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

The determination of the applicable Italian law is relatively straightforward since the declarations on Italian law are in agreement. Italian law provides for joint and several liability for joint tortfeasors. When fewer than all of the defendants settle with the plaintiff, the non-settling defendants are no longer obligated to the plaintiff for the entirety of the joint and several damages, but rather are entitled to a judgment credit "corresponding to the settled portion of liability." As described by Deloitte's expert, this "reduces the liability of the non-settling tortfeasors . . . to their own portion of liability." Therefore, the applicable judgment credit under Italian law is the proportionate share method.

V. Fairness of the Italian Method

Having concluded that Illinois choice-of-law rules would apply the Italian proportionate share formula as a judgment credit, it remains necessary to decide whether that formula is sufficiently fair to the non-settling parties to survive due

---

a partner in a law firm involved with Parmalat proceedings in Italy.

process review.  "Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role."  In re Masters Mates, 957 F.2d at 1025 (citation omitted).  Where a court is asked to apply its equitable powers to a settlement and issue an injunction, however, a court must review the terms of the settlement.  Id.  In particular, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."  Id. at 1026 (emphasis added).  Although our litigation system encourages settlement, particularly "[w]here a case is complex and expensive, and resolution of the case will benefit the public," United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 856-57 (2d Cir. 1998), courts may approve provisions in settlement agreements that bar contribution and indemnification claims between the settling defendants and non-settling defendants, only "so long as there is a provision that gives the non-settling defendants an appropriate right of set-off from any judgment imposed against them."  In re WorldCom, Inc. ERISA Litig., 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368-69 (2d Cir. 1991)).

Due process requires a court to give affected parties notice of a proposed bar order and an opportunity to participate

in an evidentiary fairness hearing.  In re Masters Mates, 957
F.2d at 1031.  Moreover, a settlement bar may only be approved
if "it is narrowly tailored and preceded by a judicial
determination that the settlement has been entered into in good
faith and that no one has been set apart for unfair treatment."
Id.  The ultimate test is one of fairness.  Id. at 1032; see
also Quad/Graphics, Inc. v. Fass, 724 F.2d 1230, 1232 (7th Cir.
1983) (recognizing right of non-settling defendants to object to
terms of settlement that precludes indemnification from settling
defendants).

       Where a judgment credit is given in an amount equal to the
settling defendant's proportionate share of liability, the
rights of the non-settling defendants "are protected even
without a determination of the fairness of the settlement."  In
re WorldCom, Inc. ERISA Litig., 339 F. Supp. 2d at 567 (citing
Gerber v. MTC Elec. Techs. Co., Ltd., 329 F.3d 297, 303 (2d Cir.
2003)).  Under such a formula, the damages that are assessed are
"always consistent with fault."  Gerber, 329 F.3d at 303
(citation omitted).  Thus, when the judgment credit is "at least
the settling defendants' proven share of liability," id., a
court is assured that a proposed bar order is fair and that the
non-settling defendants are adequately protected.

       The non-settling parties agree that a proportionate share
method is fair.  Citigroup points out that New Jersey, the

jurisdiction in which Dr. Bondi filed suit against it, has a proportionate share method as well.[10]  Cartel Capital Corp. v. Fireco of N.J., 410 A.2d 674, 685 (N.J. 1980).  The Bank of America defendants face federal RICO claims in the North Carolina action and contend that a proportionate share judgment credit would ordinarily apply to a judgment rendered on those claims.[11]

Parmalat does not contend that it is unfair to it to adopt the Italian proportionate share rule, and of course it is not

---

[10] The parties refer to the observation in Denney, 443 F.3d at 275 n.12, that a judgment credit provision might have to specify different methodologies for different jurisdictions.  Denney should not be read to require a court to predict each jurisdiction in which a judgment credit formula may be applied, and then to determine the law of these jurisdictions.  The plaintiff's choice of a forum should not drive this analysis. Instead, in the ordinary case, application of the appropriate choice-of-law rules will identify the law of the jurisdiction in which the plaintiff sustained its injury or where the plaintiff's cause of action against the settling defendants accrued.  In Denney, where the injury to each of the class members occurred had not yet been determined.  On remand, that issue could be determined and the appropriate judgment credit formulae could be identified.  In contrast to Denney, there is only one plaintiff to consider here.

[11] Dr. Bondi points out that North Carolina has a pro tanto judgment credit rule.  The rule as well as the Illinois Act are drawn from the Uniform Contribution Against Tortfeasors Act § 1. Dr. Bondi has not addressed whether North Carolina's rule applies extraterritorially.  Indeed, his submissions largely ignore the legal framework for analyzing his request that the Illinois Act's pro tanto judgment credit be imposed.

unfair.[12]  Parmalat is an Italian plaintiff suing for injuries
sustained in Italy.  As Dr. Bondi's brief admits, although the
"massive fraud that led to Parmalat's collapse occurred in
numerous countries throughout the world, the harms settled here
were those that impacted Parmalat and its affiliated entities in
Extraordinary Administration."  Although Parmalat has availed
itself of a U.S. forum, it cannot avoid application of its home
jurisdiction's law on this issue.  This is true whether it seeks
to apply the Illinois Act's pro tanto formula against non-
settling defendants with no connection of consequence to
Illinois, or whether it seeks to apply it to the non-settling
defendants in the Auditor Action, two of whom are incorporated
in Illinois.  Dr. Bondi having settled with Deloitte at a deep
discount from the billions of dollars in damages he asserted
against it, it is entirely fair to give each of the non-settling
defendants a judgment credit equivalent to Deloitte's
proportionate share of jointly inflicted damage on Parmalat in

---

[12] While he does not contend that the adoption of the
proportionate share credit is unfair, Dr. Bondi does argue that
the proportionate share method undermines predictability and may
lead to absurd results.  As an example, Dr. Bondi questions
whether a jury verdict in North Carolina in the Bank of America
Action that apportioned liability amongst all of the defendants
would then be imposed against defendants at future trials in
other jurisdictions.  There is no cause for concern, however,
because ordinary principles of collateral estoppel will in all
likelihood govern the effect of any judgments in other
proceedings.  In choosing to divide his claims among three
separate lawsuits, Dr. Bondi no doubt considered the risk that a
verdict in one action might bind him in another.

exchange for an order that will bar each of them from seeking contribution from Deloitte.

## Conclusion

For the above reasons, the Illinois Act does not supply the judgment credit formula for the Auditor Action.  Italian law applies, and the judgment credit for the bar order that is fair to the non-settling parties is the capped proportionate share method.

SO ORDERED:

Dated:    New York, New York
          February 22, 2007

_____
DENISE COTE
United States District Judge