UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re PARMALAT SECURITIES LITIGATION

This document relates to:   04 Civ. 9771 (LAK)
                                 06 Civ. 2991 (LAK)

MASTER DOCKET
04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

| | |
|---|---|
| J. Gregory Taylor | James L. Bernard |
| Allan B. Diamond | David M. Cheifetz |
| Richard I. Janvey | STROOCK & STROOCK & LAVAN LLP |
| J. Benjamin King | |
| DIAMOND MCCARTHY LLP | Linda T. Coberly |
| *Attorneys for Plaintiff* | Bruce R. Braun |
| *Parmalat Capital Finance Limited* | William P. Ferranti |
| | WINSTON & STRAWN LLP |
| Kathleen M. Sullivan | |
| Peter E. Calamari | *Attorneys for Grant Thornton Defendants* |
| Terry L. Wit | |
| Sanford I. Weisburst | |
| QUINN EMANUEL URQUHART & SULLLIVAN, LLP | |
| *Attorneys for Plaintiff Dr. Enrico Bondi* | |

LEWIS A. KAPLAN, *District Judge.*

        These actions arise out of the collapse of Italian dairy conglomerate Parmalat Finanziaria, S.p.A. ("Parmalat") and related entities. They are before the Court on remand from the Court of Appeals.[1]

---

[1]    *Parmalat Capital Finance Ltd. v. Bank of Am. Corp.*, 639 F.3d 572 (2d Cir. 2011) ("*PCFL*").

*Factual and Procedural History*

Plaintiff in 04 Civ. 9771 (LAK) is Dr. Enrico Bondi, who is overseeing Parmalat's Italian bankruptcy proceedings. Plaintiff in the second action is a Parmalat subsidiary, Parmalat Capital Finance Limited ("PCFL"), which is in liquidation in the Grand Caymans. They bring these claims against Grant Thornton International and Grant Thornton LLP (collectively, "Grant Thornton"), Parmalat's and PCFL's former outside auditor, for its alleged role in the collapse.

Bondi and PCFL filed these suits in Illinois state court in 2004 and 2006, respectively. Defendants removed them to federal court as related to certain federal bankruptcy proceedings. The actions eventually were transferred to this Court by the Judicial Panel on Multidistrict Litigation. Plaintiffs sought remand to the state court under Judicial Code Section 1334(c)(2).[2] The motions were denied on the ground, *inter alia*, that plaintiffs "failed to show that th[ese] action[s] c[ould] be 'timely adjudicated' in the state court"[3] – a showing required for mandatory abstention. Among the factors this Court relied upon in reaching that conclusion was the desirability of coordinating and resolving these cases in conjunction with another action before it – a class action by Parmalat's investors against the company's directors, banks, lawyers, and accountants (the "Securities Fraud Action").[4]

Several years of litigation followed during which extensive discovery was completed. Ultimately, the Court granted motions by Bank of America Corporation ("BoA") (sued separately) and Grant Thornton for summary judgment dismissing the complaints on the ground that the actions

---

[2] 28 U.S.C. § 1334(c)(2).

[3] *Bondi v. Grant Thornton Intern.*, 322 B.R. 44, 50 (S.D.N.Y. 2005).

[4] *In re Parmalat Secur. Litig.*, 04 Civ. 0030 (LAK).

against them were barred by the *in pari delicto* doctrine.[5]  Subsequently, the Court of Appeals affirmed the grant of summary judgment in favor of BoA[6] and, without reaching the merits, affirmed in part, vacated in part, and remanded to this Court as to Grant Thornton for further consideration of the abstention issue.[7]  Specifically, this Court is to determine whether abstention is mandatory under Section 1334(c)(2) without considering, for purposes of the Illinois court's ability to adjudicate these matters timely, the impact of these actions on the Securities Fraud Action.[8]

*Discussion*

Having considered the Court of Appeals's opinion remanding these cases and the parties' subsequent briefs, the Court holds that abstention is not mandatory under Section 1334(c)(2) for substantially the reasons advanced in defendants' briefs.[9]  It writes to elaborate on certain aspects of the abstention inquiry in the context of these cases.

---

[5] *In re Parmalat Secur. Litig.*, 659 F. Supp.2d 504 (S.D.N.Y. 2009).

[6] *Parmalat Cap. Fin. Ltd. v. Bank of America Corp.,* 412 Fed. Appx. 325 (2d Cir. 2011).

[7] This Court denied abstention only as to the Bondi action.  Citing that decision, the Northern District of Illinois denied abstention as to the PCFL action before that case was transferred here for pretrial proceedings.  As the proceedings in both cases currently are before this Court, the Court of Appeals remanded to this Court to reconsider abstention as to both cases.  *PCFL*, 639 F.3d at 576 n.1, 577.

[8] *Id.* at 581-82.

[9] *See generally* DI 1894 ("Def. Mem."), 1898 ("Def. Supp. Mem.").

Unless otherwise indicated, citations to docket entries reference the master docket *In re Parmalat Secur. Litig.*, 04 MD 1653 (LAK).

*Timely Adjudication*

The Court of Appeals held that abstention is mandatory under Section 1334(c)(2) if "these cases can be timely adjudicated in Illinois state court *at the present time*."[10] In view of the actions' factual backgrounds, timely adjudication is not possible now, whatever may have been the case years ago.

The Bondi action was transferred to this Court in December 2004, and the PCFL action in April 2006. The pretrial proceedings that took place between those transfers and the Court's September 2009 summary judgment ruling were prolonged and complex. The Court ruled on numerous discovery issues.[11] It compelled and barred various depositions.[12] It decided the admissibility of expert testimony.[13] It ruled on motions to sanction[14] and regarding spoliation.[15] And it grappled with complexities raised by the international stature of these cases, including submissions

---

[10] *PCFL*, 639 F.3d at 582 (emphasis added).

[11] *E.g.*, DI 155, 158, 324, 369, 385, 523.

[12] DI 1270, 1344.

[13] DI 1273.

[14] DI 822.  *See also* DI 194.

[15] DI 1297, 1701.

by foreign attorneys,[16] cooperation with foreign tribunals,[17] and the production of foreign documents[18] including those seized by foreign authorities.[19] By the time BoA and Grant Thornton moved for summary judgment, then, the record – with which this Court had grown thoroughly familiar – was massive.[20]

The scope of the proceedings pertinent to this issue is exemplified by the summary judgment record assembled in the Parmalat MDL of which these actions were parts. Given the myriad parties, claims and evidence, the MDL parties – including plaintiffs and defendants in these actions – were compelled to submit a joint Rule 56.1 statement[21] applicable to the various anticipated motions for summary judgment. The parties took nearly one year to negotiate the substance of that joint submission,[22] which comprised three bound volumes and totaled nearly 2,500 pages. Much of that submission was devoted to these actions. The section on *in pari delicto*, relevant to Bondi's

---

[16] DI 243.

[17] DI 1301 (withdrawing request to judiciary of Argentine Republic for assistance in obtaining testimony of Argentinian witness).

[18] DI 156.

[19] DI 923.

[20] *See* DI 1719 (listing exhibits to defendants' motion for summary judgment).

[21] Under S.D.N.Y. CIV. RULE 56.1(a), motions for summary judgment must include "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends that there is no genuine issue to be tried." Oppositions to summary judgment motions must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party and, if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* Rule 56.1(b).

[22] Tr., May 10, 2007; DI 1299, 1392, 1506, 1562, 1569, 1599.

6

claims against Grant Thornton and BoA (sued separately), comprised 219 pages and 675 paragraphs. The section relating to Grant Thornton's and BoA's motions for summary judgment against PCFL comprised 85 pages and 375 paragraphs. And the section relating to Grant Thornton's motions against Bondi, PCFL and plaintiffs in the Securities Fraud Action comprised 316 pages and 787 paragraphs. All of this of course was merely the tip of the iceberg, as Rule 56.1 statements consist only of simple statements or propositions of fact that the parties believed were supported by the record. The record itself was exponentially larger.

Against this backdrop, there is no invidious comparison in concluding that an Illinois state court now could not adjudicate these actions in a timely fashion. First, it would take any court an extraordinary amount of time merely to familiarize itself with the record thus assembled over a period of years.[23] Second, and perhaps more importantly, an Illinois state court not only would have to become intimately familiar with what previously has transpired here but, quite likely, to go over a substantial amount of the same ground, as the prior rulings in these matters perhaps could be revisited by the state court which, if abstention were granted, might not be bound by what this Court

---

[23] *See PCFL*, 639 F.3d at 581 ("[W]hen the facts in a case are especially complex, the forum with greater familiarity with the record may . . . be expected to adjudicate the matter more quickly.").

Plaintiffs contend that these cases involve legal complexity on the state law doctrine of *in pari delicto* and that abstention is appropriate because Illinois courts would be the appropriate fora to resolve any unsettled questions. *See* DI 1886 ("Pl. Mem.") at 10-11. As the Court of Appeals noted, "there is some doubt as to the nature and reach of th[at] defense" in Illinois." *PCFL*, 639 F.3d at 580 n.8. But this Court's application of *in pari delicto* in ruling on summary judgment was consistent with Illinois courts' previous applications of the doctrine. *See Bondi*, 659 F. Supp.2d at 519-20 & n.103. *See also Parmalat Capital Finance Ltd. v. Bank of Am. Corp.*, 412 Fed. Appx. 325, 327 & n.2. (2d Cir. 2011) (affirming this Court's application of *in pari delicto* under North Carolina law with respect to analogous claims against BoA, even though the North Carolina Supreme Court had not addressed the precise application at issue there). In any case, insofar as there is some lack of clarity on *in pari delicto* in Illinois, that limited uncertainty is overshadowed considerably by the factual complexities of these cases.

has decided.[24] The extensive discovery that has been completed is the product of this Court's discovery rulings – each of which at least one side likely wishes had come out differently. The summary judgment ruling turns, in part, on rulings as to the admissibility of evidence offered by the plaintiffs[25] – rulings which, it should be noted, were affirmed by the Court of Appeals in the BoA case.[26] In the event of a remand, however, it would be entirely unrealistic to assume that the parties simply would pick up where they left off[27] when a second bite at all of these apples might alter their respective positions on summary judgment, at trial or in settlement negotiations. In short, not only would it take the state court very substantial time merely to become familiar with this enormous record, it would be confronted with attempts to relitigate issues already litigated here and, in important respects, already affirmed on the merits in the BoA case.

As the Court of Appeals made clear in remanding this case, the question here is "whether these cases can be timely adjudicated in Illinois state court *at the present time*."[28]

---

[24] *See In re C & M Props., L.L.C.*, 563 F.3d 1156, 1166 (10th Cir. 2009) ("When a case is remanded to state court, . . . [t]he state court is free to revisit any issue decided by the federal court in a remanded claim prior to remand, and is 'perfectly free to reject the remanding court's reasoning.'" (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006)). *See also* Pl. Mem. at 11 & n.2.

[25] *See In re Parmalat Secur. Litig.*, 659 F. Supp.2d at 525-30.

[26] *Parmalat Cap. Fin. Ltd. v. Bank of America Corp.*, 412 Fed. Appx. at 328.

[27] Accordingly, plaintiffs' contention that the Illinois state court could dispose of these matters within six months due to "the extent of discovery that has already taken place in this Court" is misguided. Pl. Mem. at 11-12. Indeed, plaintiffs seek abstention precisely so that the state court may revisit one of this Court's rulings, *to wit*, the decision on summary judgment.

[28] *PCFL*, 639 F.3d at 582 (emphasis added). *See also id.* ("It would be futile for the district court on remand to consider only the facts known to it at the time of its initial order."). The parties recognize this aspect of the Court of Appeals's remand order and, where helpful to their respective positions, emphasize it. *See* Pl. Supp. Mem., DI 1896 ("Pl. Supp. Mem.") at 10; Def.

Comparative speed, while not dispositive, is an important consideration.[29] If abstention were denied and the Court of Appeals were to decide the Bondi and PCFL appeals from the summary judgment ruling on the merits, one of two things would follow. The Court of Appeals would affirm the grant of summary judgment, in which event this case would be over quite promptly. Or the Court of Appeals would reverse the grant of summary judgment, in which case the PCFL action would proceed to trial promptly before this Court, and the Bondi action (which was transferred here solely for pretrial proceedings) would proceed to trial before the Northern District of Illinois[30] with all of this Court's pretrial and evidentiary rulings intact by virtue of the law of the case doctrine. On the other hand, if this Court were to abstain, the Illinois state court that would receive it likely would take years simply to reach the point at which this litigation otherwise stands right now.[31]

---

[29] Mem. at 1, 6.

[30] *PCFL*, 639 F.3d at 580 (The timeliness inquiry requires, *inter alia*, "a case- and situation-specific . . . comparison of the time in which the respective state and federal forums can reasonably be expected to adjudicate the matter.").

[31] That the Northern District of Illinois is unfamiliar with the factual record does not require abstention. First, that court – unlike the Illinois state court in the event of abstention – would not have to preside over the remaining pretrial litigation. Indeed, the Northern District of Illinois could familiarize itself with the case's background while this Court presides over those pending matters. Second, as the parties agree, the Northern District of Illinois proceeds more quickly than the Illinois state court as a general matter. *See* Pl. Mem. at 8-9; Def. Mem. at 2-6. Third, the Northern District of Illinois would be entitled to regard this Court's pretrial rulings as the law of the case. Finally, the possibility that the Bondi action could be concluded entirely by virtue of this Court's summary judgment ruling exists only if abstention is denied.

This case therefore stands in stark contrast to *Stoe v. Flaherty*, No. 04-489, 2006 WL 2927272 (W.D. Pa. Oct. 11, 2006). In *Stoe*, the Western District of Pennsylvania first held that abstention under Section 1334(c)(2) was not mandatory and then resolved the case on its merits. The Third Circuit, however, subsequently reversed the abstention decision and remanded for further consideration. The district court then held that abstention was mandatory in large part because it rejected the defendants' "conten[tion] that [there would be] 'inevitable obstacles' to timely adjudication in the state proceeding." *Id.*, 2006 WL 2927272, at *2. *See also* Def. Mem. at 9-10. Here, however, there undoubtedly would be such obstacles for the reasons described above.

In all the circumstances, it is not disrespectful to say that the Illinois state courts – which, the parties agree, proceed somewhat more slowly than this Court as a general matter[32] – could not timely adjudicate these matters. Through no fault of theirs, this Court has had an enormous head start. In all the circumstances of these cases, abstention is not mandatory.[33] In any case, the Court would reach the same result on an alternative basis were that necessary.

*Supplemental Jurisdiction*

Mandatory abstention under Section 1334(c)(2) applies only to "action[s that] could not have been commenced in a court of the United States absent jurisdiction under this section." In addition to the reasons discussed above, abstention is not mandatory here because these actions could have been commenced in federal court under Judicial Code Section 1367[34] on the ground that the Court's supplemental jurisdiction would have reached them in light of the pendency of the Securities Fraud Action.

Although defendants raised this issue for the first time after the Court of Appeals's remand on the mandatory abstention issue, consideration of this argument is not barred by the law of the case doctrine. That doctrine, which in any case is discretionary, does not apply here for two reasons.

First, the law of the case doctrine prohibits reconsideration of issues previously

---

[32] *See* Pl. Mem. at 10; Def. Mem. at 2-6.

[33] As the Court would reach this conclusion regardless of which party bears the burden of demonstrating that abstention is (or is not) mandatory, that issue need not be decided here.

[34] 28 U.S.C. § 1367.

10

decided.[35]  But "[i]t does not preclude consideration of issues [like this one] which might have been, but were not, actually raised in prior proceedings."[36]

Second, where an appeals court's mandate limits a district court's consideration on remand to specific issues, the doctrine prohibits a district court from considering extraneous issues.[37] Here, however, the Court of Appeals remanded with the following instruction: "A mandate shall issue forthwith remanding these cases to the district court to hold *such proceedings as are necessary to assess whether § 1334(c)(2) abstention is mandatory.*"[38]  Section 1334(c)(2), by its own terms, exempts from mandatory abstention cases that could have been brought in federal court in the first instance.  Consideration of this question therefore falls within the Court of Appeals's mandate.

Additionally, it is of no moment that the Securities Fraud Action – the anchor for supplemental jurisdiction for these cases – has been resolved.  Although the timeliness inquiry is to be conducted by reference to present circumstances,[39] the portion of Judicial Code Section 1334(c)(2) exempting cases that "could . . . have been commenced in a [federal] court" is, as defendants point

---

[35] *See United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002).  Plaintiffs' argument that defendants "waived thi[is] argument by failing to raise it [previously] in the Second Circuit," Pl. Supp. Mem.at 3, therefore fails.  As defendants never advanced this argument before this Court, they could not have appealed it.  "[A]n issue cannot be waived by failure to raise it on appeal unless it could have been raised on that appeal." *Id.* at 1229 n.7.

[36] *Riley v. MEBA Pension Trust*, 452 F. Supp. 117, 120 (S.D.N.Y. 1978).

[37] *See Quintieri*, 306 F.3d at 1229 (2d Cir. 2002).

[38] *PCFL*, 693 F.3d at 582 (emphasis added).

[39] *See PCFL*, 639 F.3d at 582.

out, "backward-looking" and "hypothetical."[40] The question therefore is not whether plaintiffs today could bring these actions in federal court under Section 1367 but whether they could have done so in 2004 and 2006. And they quite clearly could have done so.

Accordingly, in its discretion and in the interests of justice, the Court will consider the supplemental jurisdiction argument.[41]

Supplemental jurisdiction exists where a claim that would not otherwise be within the jurisdiction of a federal court shares a "common nucleus of operative fact" with claims asserted in a federal court action over which federal subject matter jurisdiction exists.[42] As this Court stated in its first abstention decision, "[m]any of the allegations in [these cases] are similar to those in the Securities Fraud Action, and there is no real dispute that many of the same discovery issues are likely to arise in both."[43] These cases, in other words, were "piece[s] of a much larger, extremely complex

---

[40] Def. Supp. Mem. at 1-2.

[41] Plaintiffs have offered no persuasive argument that they will be prejudiced if the Court now considers this argument, and there is no indication that defendants' failure to raise this point previously was done in bad faith. *Accord Riley*, 452 F. Supp. at 120 ("Defendant's failure to raise the question earlier, however regrettable, did not prejudice plaintiff, since the legal question can be argued now as readily as a year ago. Where there is no prejudice resulting from delay, and where, as here, there is no evidence that defendant acted in bad faith in failing to raise the new argument earlier, our discretion should be exercised in favor of reaching the merits of defendant's contention.").

[42] *See, e.g.*, *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

As long as federal claims share a "common nucleus of operative fact" with state law claims, supplemental jurisdiction is appropriate irrespective of whether the state law claims are asserted in the same action as the federal claims or in a separate action. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006); *Alderman v. Pan Am World Airways*, 169 F.3d 99, 101-02 (2d Cir. 1999).

[43] *Bondi*, 322 B.R. at 50.


12

litigation puzzle" that included the Securities Fraud Action.[44]

Even a cursory reading of the three complaints reveals the tremendous factual overlap shared by the PCFL and Bondi actions, on the one hand, and the Securities Fraud Action, on the other. All three of course grow out of the fraud and collapse of Parmalat.[45] But the similarities run much deeper than that. The Bondi complaint asserted claims against Grant Thornton for, *inter alia*, "fail[ing] to audit Parmalat properly," having an "active role in looting the company," and "fail[ing] to conduct the most fundamental audit inquiries."[46] The PCFL complaint accused Grant Thornton of "acts and omissions. . . perpetrated in its dual role as auditor of [PCFL] and of [Parmalat]."[47] It alleged that "Grant Thornton failed to exercise the reasonable care and dilligence that would have led it to discover that Parmalat (its client) was using [PCFL] (also its client) to hide Parmalat's deepening and ultimate insolvency by causing [PCFL] to fund millions of dollars of fictitious or

---

[44] *Id. See also PCFL*, 639 F.3d 572 at 577 ("In December 2005, PCFL likewise filed suit against Grant Thornton in Illinois state court alleging similar claims to those asserted by Bondi.").

[45] *See* DI 108 Ex. A ("Securities Cpt.") ¶ 4 (asserting "a federal securities class action . . . involv[ing] the stunning collapse of international dairy conglomerate Parmalat . . . as a result of what the SEC has aptly described as '*one of the largest and most brazen corporate financial frauds in history*'"); *Bondi v. Grant Thornton Int'l, et al.*, 04 Civ. 6031 (N.D. Ill.) DI 1 ("Bondi Cpt.") ¶ 1 (suing "Parmalat's Illinois- and United States-based auditors for the crucial parts they played in the theft and disappearance of over $14 billion dollars from Parmalat" in what the SEC "has described as . . . 'one of the largest and most brazen corporate financial frauds in history'"); *Parmalat Capital Finance Ltd v. Grant Thornton, et ano*, 06 Civ. 0047 (N.D. Ill.) DI 1 ("PCFL Cpt.") ¶ 125 (titled "The Collapse of Parmalat And [PCFL]").

*See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213-14 (2d Cir. 2004) (finding "a sufficient factual relationship" for the "same 'case'" test where the federal and state claims "originate[d] from the Plaintiffs' decision to purchase Ford cars.").

[46] Bondi Cpt. at 44, 46, 99.

[47] PCFL Cpt. ¶ 1.

13

unrecoverable loans to Parmalat related entities."[48]  For their part, plaintiffs in the Securities Fraud Action claimed that Grant Thornton "deliberately participated in [Parmalat's] fraud" and/or performed "audits [that] were so extremely reckless that they were tantamount to intentional fraud."[49]  Thus, plaintiffs in all three actions sued Grant Thornton for substantially the same alleged conduct.

As would be expected, the allegations supporting plaintiffs' claims in all three cases "substantially overlapped,"[50] as a few examples will serve to illustrate.  The complaints in the Securities Fraud Action and Bondi action alleged that Grant Thornton used three Netherlands companies – Curcastle, Zilpa and Dancent – to obscure Parmalat's losses.[51]  All three complaints raised also Parmalat's allegedly fraudulent use of Bonlat (an allegedly sham entity formed to facilitate and hide the fraud) to divert funds to the entities Web Holdings and Western Alps Foundation[52] – Delaware entities allegedly created to further facilitate the fraud.  Specifically, the

---

[48] *Id.*

[49] Securities Cpt. ¶ 954.

Although the Securities Fraud Action focused on the collapse of Parmalat, PCFL factored in the allegations.  For example, the complaint alleged that Deloitte – a defendant in both the Securities Fraud Action and the PCFL action – knew or should have known about certain aspects of the Parmalat fraud by virtue of its audits of Parmalat Capital Finance B.V., *id.* ¶ 985, an entity related to PCFL, *id.* ¶ 487.

[50] *Achtmann*, 464 F.3d at 335 (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

[51] Bondi Cpt. ¶¶ 188-99; Securities Cpt. ¶ 200.

[52] Bondi Cpt. ¶¶ 268-74; Securities Cpt. ¶ 888; PCFL Cpt. ¶¶ 111-18.

14

Securities Fraud Action complaint alleged that Grant Thornton knew or should have known that PCFL, which it audited, fraudulently transferred money to these entities.[53] The PCFL complaint made the same allegation.[54] And the Securities Fraud Action and PCFL complaints both alleged improprieties with respect to an $80 million loan from BoA to Parmalat Venezuela.[55]

The extensive factual overlap among these actions makes the Bondi and PCFL cases quintessential instances for the exercise of supplemental jurisdiction. They therefore could have been brought in federal court pursuant to Section 1367. Thus, even if the Illinois state court could adjudicate these actions in a timely fashion, and this Court respectfully finds to the contrary, abstention would not be mandatory.

*Conclusion*

The motions to abstain under Section 1334(c)(2) are denied.

SO ORDERED.

Dated:      August 31, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[53] Securities Cpt. ¶ 884.

[54] PCFL Cpt. ¶¶ 111-18.

[55] *Id.* ¶¶ 84-91; Securities Cpt. ¶¶ 846-47.